IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN E. JAMES,                                      )
                                                    )
          Petitioner,                               )        No C 02- 4606 JSW (PR)
                                                    )
    vs.                                             )        ORDER DENYING PETITION
                                                    )        FOR A WRIT OF HABEAS
ANTHONY A. LAMARQUE, Warden,                        )        CORPUS
                                                    )
          Respondent.                               )        (Docket No. 47)
_____                    )

## INTRODUCTION

John E. James, a prisoner of the State of California, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Per order filed on January 4, 2005, this Court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause.  Respondent filed an answer on May 6, 2005.  Petitioner's traverse to the answer was filed on June 29, 2005.  This order denies the petition for writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

A Contra Costa County Superior Court jury found Petitioner guilty of robbery and being an ex-felon in possession of a firearm on July 12, 1998.  On October 5, 1998, Petitioner was sentenced to thirteen years in state prison.  Petitioner appealed to the California Court of Appeal, First District, which affirmed the conviction in a reasoned opinion filed on October 22, 1999.  The Supreme Court of California denied a petition for review in 1999.

1    In 2000, Petitioner filed a writ of habeas corpus in the superior court restating

2    several claims that he had raised on direct appeal and raising numerous additional

3    claims.  The state habeas petition was denied by the superior court on May 22, 2001.

4    The California Court of Appeal, First District, denied the petition on June 26, 2001.

5    The Supreme Court of California also denied the petition on February 27, 2002.

6    Petition filed the instant matter on September 24, 2002.

7                              **FACTUAL BACKGROUND**

8        The facts underlying the charged offenses as articulated by Petitioner are

9    summarized below.[1]  These facts are generally undisputed by Respondent and also

10   appear in Respondent's memorandum of points and authorities in support of its

11   answer.[2]

12        On February 27, 1998, Betty Banuelos was working as a clerk at
     the J & A Market in El Sobrante.  Reporter's Transcript ("RT") 328.  At
13   approximately 8:30 p.m., a customer named James Glotch was
     purchasing items from Banuelos at the counter.  RT 297.

14
15        At that time, an [African American] male came into the store
     wearing a ski mask over his face.  RT 297.  He was wearing a navy blue
16   nylon jogging suit, RT 304-305, and was holding a semi-automatic gun
     in his hand, RT 298-299.  The robber went behind the counter, stood
17   behind Banuelos and pointed a gun at her.  RT 299, 331-332.  He told
     her to open the cash register drawer.  RT 300, 333.  Banuelos opened the
18   drawer and the man grabbed all of the money out of the drawer.  RT
     300, 344.  He then asked where the rest of the money was and Banuelos
19   pointed at a money bag on a nearby shelf.  RT 301-301, 334-335.  The
     zipper on the money bag was held together with a paper clip.  RT 337.
20   The robber grabbed the money bag and left the store.  RT 302, 335.  The
     man's clothes, the gun and the money bag were not muddy when he left
     the store.  RT 306, 337, 338-339.

21
22        After the robber left the store, both Glotch and Banuelos waited
     to hear a car leave from the store parking lot [before reporting the
23   robbery], but neither [one] ever heard a car engine.  RT 305-306, 339.
     There was a very steep hillside which led to D'Avilla Way, near the
24   store.  RT 308-309, 341-343.  In February 1998, the hillside was very

25        [1]  Petition ("Pet.") at 7-11.

26        [2]  Respondent ("R.") at 2-5.  Facts derived solely from Respondent's Answer
27   are identified as such below.

28                                    2

1 | muddy due to rain.  RT 314, 317, 343.

2 | After approximately five minutes, Banuelos called the police [to
3 | report the robbery].  RT 571.  Sheriff's Deputies Carrie Sanchez and
Bani Kollo responded to the scene.  RT 571, 627-628.

4 | At approximately 9:00 p.m. that night, San Pablo Police Officer
5 | Terry Keefe was on duty at the Doctor's Medical Center in San Pablo,
four to five miles away from the J & A Market.  RT 369, 573.  Officer
6 | Keefe was in his patrol vehicle in the parking lot of the hospital when he
noticed a grey colored Dodge parked in the red zone of the hospital.  RT
7 | 371.  Petitioner was leaning on the open driver's door of the car[,]
screaming in pain.  RT 372.  There were three other males and one
8 | female near the car.  RT 374.  Officer Keefe went to assist Petitioner and
Petitioner told him that he was running, he fell and he thought that he
9 | had broken his hip.  RT 375.  Petitioner was wearing a dark blue or
black nylon jogging suit.  RT 376.  Petitioner's clothes were covered in
mud.  RT 376.

10 |
11 | Officer Keefe and nurse Carl Groff helped Petitioner onto a
gurney and took him to the emergency room.  RT 375-377, 419-420.
12 | The female standing by the car followed Petitioner into the hospital.  RT
421.  As Groff began to cut off Petitioner's black nylon jogging pants so
that he could treat Petitioner's hip, Petitioner called the young woman to
13 | his side.  RT 421-422, 653-654.  Petitioner took something out of his
pocket and handed it to the female, and she left the area.  RT 423.  Groff
14 | saw bullets in the item.  RT 423.

15 | Believing that he saw Petitioner hand the female a weapon, Groff
called to Officer Keefe.  RT 424.  He told Officer Keefe that he thought
16 | the female had a weapon.  Officer Keefe followed the female.  RT 424.
After Officer Keefe left, Petitioner said, "That was the wrong thing to
17 | do, Carl.  You shouldn't have done that.  I know who you are.  I know
how to find you.  I will get you."  RT 425.  Groff became frightened and
18 | assigned Petitioner's case to someone else.  RT 426.  Petitioner also told
Groff that he needed to get to his car.  RT 427.

19 |
20 | Officer Keefe detained and searched the female.  RT 382.  In her
left rear pants pocket, Officer Keefe found a loaded, nine-millimeter
21 | magazine.  RT 382, 386.  Officer Keefe then searched Petitioner and
found nothing.  Officer Keefe told Petitioner that the nurse had seen him
22 | hand the magazine to the female.  RT 385.  Petitioner said, "So fucking
what.  Its not illegal."  RT 385.

23 | Officer Richard Smith of the San Pablo Police Department
responded to Officer Keefe's call for backup.  RT 433.  Officer Keefe
24 | pointed out Petitioner's grey Dodge, which was still parked in the red
zone in front of the hospital.  RT 433.  Officer Smith looked through the
25 | windows of the vehicle and noticed that the steering wheel and gear shift
were muddy.  RT 439-440.  He also noticed that the top edge of a
26 | handgun protruding from underneath the front passenger seat.  RT 435.
When Officer Smith [went to retrieve the gun from under the seat, he

27 |
28 | 3

noticed a ski mask and black money bag also under the seat, next to the gun]. RT 436.  The gun and the money bag were muddy.  RT 436.

Glotch, [a customer at the J & A Market and a witness to the robbery,] identified the gun that Officer Smith found as the gun used during the robbery.  RT 321.  There was a loaded magazine in the gun.  RT 629.  [J & A Market clerk] Banuelos identified the money bag found in the Dodge as the one she gave the robber.  It had a paper clip holding the zipper together.  RT 337.  Later, the officers seized papers with Petitioner's name from the car.  RT 703.

After discovery of the money bag, gun, and ski mask, Deputies Kollo and Sanchez were dispatched from the J & A Market to the hospital.  RT 627- 628.  Upon arrival, Deputy Kollo contacted Officer Smith who gave him the loaded gun, money bag, ski mask, and second magazine.  RT 629, 631.

Deputy Kollo then contacted Petitioner inside the hospital.  RT 637.  Deputy Kollo noticed that Petitioner has mud and dirt on his hands.  RT 637.  [Kollo] asked his sergeant to get a camera so he could photograph Petitioner's hands.  RT 638.  At that point, Petitioner began wiping his hands on the bed sheet.  RT 638.  Petitioner had removed most of the mud by the time the pictures were taken.  RT 639.

The Officers also detained three males who were with Petitioner when he first got out of the car.  RT 647.  None of the males had any mud on them when they were detained.  RT 573, 647.  The female did not have any mud on her either.  RT 574.

Isaiah Moore, one of the other men with Petitioner, testified that he lived in Mill Valley, near Tyrae Patterson, the female companion of Petitioner on the night of the robbery.  RT 532.  [On the evening of the robbery,] Moore left Mill Valley with Petitioner, Patterson, and two other males.  RT 532-533.  Petitioner was driving and Patterson was in the front passenger seat.  RT 534.  Petitioner said he was going to pick up some clothes from his grandmother's house in Richmond.  RT 535.  Eventually, Petitioner stopped the car, and he and Patterson got out.  Moore and the others stayed in the car.  RT 536.  [Petitioner and Patterson] were gone about forty-five minutes.  RT 537.  When they returned, Petitioner had a bag of clothes that he put in the trunk of the car.  RT 538.

Petitioner started to drive around again.  They drove about two miles and parked somewhere on a hill.  RT 539.  Moore did not know the name of the street [where the car was parked], but his description of the area was similar to the area near D'Avilla Way and the J & A Market.  RT 308, 340, 539, 576-577, 587.  Moore could not see out of the car windows because it was raining that night.  RT 540.

Petitioner got out of the car and was gone about ten minutes.  RT 540- 541.  When Petitioner came back to the car, he was limping.  RT 541.  Petitioner drove to the hospital and parked in front of the emergency entrance.  RT 543.  Moore never saw the other two males in

the car with the ski mask, gun, or money bag.  RT 545-546.

Moore told Deputy Sanchez on the night of the robbery that when Petitioner picked up the three males, Petitioner stated that he wanted to commit a robbery.  RT 585.  Moore also stated that the three males agreed to go along with Petitioner.  RT 585.  Moore was originally charged as an accessory, but the charges were dropped.  RT 547, 551.

*Defense*

Defense counsel stipulated that three papers bearing Petitioner's name were found in the automobile driven by Petitioner to the emergency room, and that Petitioner's driver's license was in the wallet that was taken from him at the emergency room.  RT 703.

The defense presented evidence from a criminalist employed by the Contra Costa County Sheriff's Department that the hairs he extracted from the ski mask ostensibly used in the robbery did not match the Petitioner's head.  RT 724.  It was possible that there was other hair in the fibers of the mask that were not extracted, but it was logical to infer that the hair of the last person to have worn the mask would be found.  RT 706-09.

The parties stipulated that Petitioner is five-feet and five-inches tall and at the time of trial weighed 120-125 pounds.  RT 715.  During the trial, Glotch estimated that the robber was five-feet and six or seven-inches tall.[3]  RT 304, 325.  Banuelos testified that the robber was approximately five-feet six-inches tall and weighed 150-165 pounds.[4]  RT 356-357.  During her testimony, Banuelos admitted that she may have told the deputies on the night of the robbery that the robber was five-feet, ten-inches tall.[5]  RT 356-357.

The jury was instructed that there was a stipulation that the "Ex-Felon" element of the offense charged on Count II, Ex-Felon in possession of a firearm (§ 12021), was proved.  RT 744, 745.

At a separate court trial after Petitioner was found guilty by the jury of the offenses and enhancements alleged in Counts I and II, the court found it true that Petitioner committed the present offenses while on probation for a previous felony, false imprisonment.  RT 814-815.

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he

---

[3]  R. at 5.

[4]  *Id.*

[5]  *Id.*

is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  A district court may grant a petition challenging a state

conviction or sentence on the basis of a claim that was "adjudicated on the merits" in

state court only if the state court's adjudication of the claim: "(1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court

may grant the writ if a state court identifies the correct governing legal principle from

the Supreme Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case."  *Williams*, 529 U.S. at 413.  As summarized by the Ninth Circuit:

"A state court's decision can involve an 'unreasonable application' of federal law if it

either 1) correctly identifies the governing rule but then applies it to a new set of facts

in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly

established legal principle to a new context in a way that is objectively unreasonable."

*Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*;

*Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application

must also be unreasonable."  *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*,

6

541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).  In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal habeas court should conduct an independent review of the record.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision.  *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  *Id.*

In his petition for habeas corpus Petitioner asserts ten claims for relief: (1) the trial court committed a prejudicial error in denying Petitioner's challenge to prospective juror No.18, denying Petitioner's right to an impartial jury; (2) handcuffing of petitioner in view of the jury violated Petitioner's due process rights; (3) the trial court denied Petitioner his constitutional rights to a fair trial by denying his motion to sever Count II; (4) the trial court erred in accepting Petitioner's stipulation to his ex-felon status; (5) the trial court improperly admitted evidence of

7

Petitioner's actions while in custody in violation of his *Miranda* rights; (6) prosecutorial misconduct; (7) ineffective assistance of counsel; (8) the trial court abused its discretion and committed a reversible error by improperly admitting evidence and denying Petitioner's *Marsden* motion; (9) ineffective assistance of appellate counsel; and (10) cumulative error.

## DISCUSSION

### A.  Right to an Impartial Jury

Petitioner claims that his Sixth Amendment and due process rights were violated when the trial court denied Petitioner's challenge to prospective Juror No. 18, causing Petitioner to use a peremptory challenge to strike the juror.  During voir dire, prospective Juror No. 18 indicated to the court that she had previous experience on a jury and that she had felt "conned" by the defense in her previous jury experience.  RT 196.  In response, the court asked Juror No. 18 if she thought she would "be able to set aside her experience from the last trial and be fair and impartial in this case," to which the juror replied, "That would be my objective."  RT 173.  Asked again by the court whether she could try to be fair and impartial, Juror No. 18 replied, "Yes."  RT 173.

Defense attorney requested that the trial court dismiss Juror No. 18 for cause and the trial court denied the request.  In defense of its refusal to remove Juror No. 18, the trial court stated, "[Juror No. 18] obviously had some feelings about what occurred during the trial that she sat on.  She also said that she would not hold it against the defense in this case.  So I did not believe it rose to the level of a challenge for cause."  RT 197.  Defense counsel subsequently used a peremptory challenge to remove Juror No. 18.  RT 176.  Defense counsel used up all ten of its peremptory challenges during voir dire.  RT 229.

\

### 1.  Legal Standard

1    A criminal defendant has a constitutional right to a fair and impartial

2  jury pool composed of a cross section of the community.  *See Holland v. Illinois*, 493

3  U.S. 474, 476 (1990); *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975); *Duncan v.*

4  *Louisiana*, 391 U.S. 145, 148-58 (1968).  A prospective juror must be removed for

5  cause if his views or beliefs would prevent or substantially impair the performance of

6  his duties as a juror in accordance with his instructions and his oath.  *See Wainwright*

7  *v. Witt*, 469 U.S. 412, 424 (1985).  "Even if only one juror is unduly biased or

8  prejudicial, the defendant is denied his constitutional right to an impartial jury."

9  *Tinsley v. Borg*, 895 F.2d 520, 523-34 (9th Cir. 1990) (internal quotations omitted),

10  *cert. denied*, 498 U.S. 1091 (1991).

11    The state court's determination of juror impartiality is entitled to a presumption

12  of correctness on federal habeas review.  *See Wainwright*, 469 U.S. at 429.  Federal

13  habeas relief may be granted for a state court's failure to strike a juror for cause only

14  where there is no fair support in the record for the trial court's determination that the

15  juror was unbiased.  *Id.* at 424.

16    Additionally, a trial court's failure to strike a biased juror will not amount to a

17  constitutional violation so long as the jury that sits is impartial.  *See Ross v.*

18  *Oklahoma*, 487 U.S. 81, 88 (1988).  The fact that a defendant had to use a peremptory

19  challenge to remedy a court's failure to strike a juror for cause does not mean that the

20  his Sixth Amendment right to an impartial jury or his due process rights were violated.

21  *See id.*  Having to use a peremptory challenge to help secure the constitutional

22  guarantee of trial by an impartial jury is in line with the principal reason for

23  peremptory challenges and it does not amount to the loss of a peremptory challenge.

24  *See United Stated v. Martinez-Salazar*, 528 U.S. 304, 314-16 (2000).

25  \

26    **2.    Analysis**

27

28                                         9

Petitioner claims that his constitutional rights were violated because the trial court refused to remove Juror No. 18 for cause, forcing the defense to use one of its peremptory challenges. This claim was brought by Petitioner on direct appeal. The California Court of Appeal, First Appellate District, in a reasoned opinion, addressed Petitioner's claim of trial court error in its failure to excuse Juror No. 18.

The Court of Appeal noted that Juror No. 18's testimony was "conflicting" but that the Supreme Court of California repeatedly holds that "when a juror gives conflicting or equivocal answers to questions regarding his or her impartiality, the trial court's determination of the juror's state of mind binds the appellate court." *People v. James*, No. A084516, slip op. at 4 (Cal. Ct App. Oct. 22, 1999). The Court of Appeal also cited California law in finding, "(w)hen a defendant contends that the trial court wrongly denied a challenge for cause, he or she must demonstrate that the right to a fair and impartial jury was thereby affected." *Id.* (citing *People v. Crittenden*, *supra*, 9 Cal.4th 83, 121 (1994)).

The Court of Appeal noted that in order for Petitioner to show that the denial of his challenge for cause deprived him of an impartial jury, he must show that he used all his peremptory challenges and that he indicated a dissatisfaction with the jury as it sat. The Court of Appeal concludes that although Petitioner used all of his peremptory challenges, he never articulated an objection to the seated jury and thus he failed to show that he was deprived of an impartial jury.

The Court of Appeal's decision is not contrary to, or an unreasonable application of, established federal law as articulated by the Supreme Court of the United States. The Court of Appeal afforded the trial court's decision of Juror No. 18's impartiality the necessary discretion as required by *Wainwright*. The trial record contained testimony by Juror No. 18 indicating that she would try to be fair and impartial if asked to sit on the jury panel, supporting the trial court's decision that she

10

1   was unbiased and should not be struck for cause.  As stated by the Supreme Court in

2   *Wainwright*,  federal habeas relief may only granted for a state court's failure to strike

3   a juror for cause where there is no fair support in the record for the trial court's

4   determination that the juror was unbiased.  469 U.S. at 424.

5           Additionally, a trial court's failure to strike a biased juror will not amount to a

6   constitutional violation so long as the jury that sits is impartial.  *See Ross*, 487 U.S. at

7   88. Thus, because Petitioner did not articulate a challenge to the impartiality of the

8   jury as it sat, he does not establish a constitutional violation that would merit habeas

9   relief.  Therefore, the Court of Appeal's decision that Petitioner did not show that

10  denial of his challenge of Juror No. 18 deprived him of his right to an impartial jury is

11  consistent with controlling federal law.

12  **B.      Handcuffing of Petitioner in View of the Jury**

13          Petitioner claims that the trial court erred in denying his motion for a mistrial

14  because it was improper to transport him to and from the courtroom in handcuffs in

15  view of the jury.  Petitioner alleges that the handcuffing violated his right to due

16  process because "shackles, like prison attire, are a constant and prejudicial reminder of

17  the accused's status, and as such, impermissible in the absence of manifest necessity."

18  *James*, slip op. at 5.  Petitioner argues that there was no manifest necessity for

19  restraining him with handcuffs during transport

20          **1.      Legal Standard**

21           The Fifth and Fourteenth Amendments prohibit the use of physical restraints

22  visible to the jury absent a trial court determination, in the exercise of its discretion,

23  that restraints are justified by a state interest specific to a particular trial.  *Deck v.*

24  *Missouri*, 544 U.S. 622, 629 (2005); *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir.

25  1999).

26          A trial court's discretion to use shackles is reviewed under an abuse of

27

28                                                11

1    discretion standard. *See Deck,* 544 U.S. at 629; *Wilson v. McCarthy*, 770 F.2d 1482,

2    1485 (9th Cir. 1985). In deciding whether the trial court's erroneous decision to

3    shackle violated a defendant's due process rights, a federal habeas court should

4    "determine whether what [the jurors] saw was so inherently prejudicial as to pose an

5    unacceptable threat to defendant's right to a fair trial." *Holbrook v. Flynn*, 475 U.S.

6    560, 572 (1986).

7    However, a jury's brief or inadvertent glimpse of a defendant in physical

8    restraints outside of the courtroom does not presumptively warrant habeas relief. *See*

9    *Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004). Additionally, where care is

10    taken to ensure that a defendant's shackling is not visible to the jury in the courtroom,

11    prejudice is not presumed. *Id.* (juror's viewing of defendant in handcuffs with coat

12    draped over his handcuffed hands as he went to or from the courtroom was not

13    inherently or presumptively prejudicial); *Rich v. Calderon*, 170 F.3d 1236, 1240 (9th

14    Cir. 1999) (no constitutional error where defendant was only shackled with ankle

15    chains during trial and shackles were behind curtain or skirt placed around the defense

16    table to ensure they were not visible to the jury), *amended*, 187 F.3d 1064, 1069 (9th

17    Cir. 1999). In such cases a defendant must show actual prejudice to warrant habeas

18    relief. *See Rhoden*, 172 F.3d at 636. To show actual prejudice, a defendant must

19    show that the shackling "'had a substantial and injurious effect on the jury's verdict."

20    *Ghent v. Woodford*, 279 F.3d 1121, 1132 n.9 (9th Cir. 2002) (quoting *Brecht v.*

21    *Abrahamson*, 507 U.S. 619, 623 (1993)).

22    **2.    Analysis**

23    Petitioner claims that handcuffing him in view of the jury during his transport

24    into and out of the courtroom violated his due process rights under the Fourteenth

25    Amendment. Petitioner brought this claim on direct appeal and the Court of Appeal

26    rejected Petitioner's claim in a reasoned opinion.

27

28    12

1    The Court of Appeal noted that the record does not contain any evidence that
2    Petitioner was in restraints in the courtroom itself during trial and in the jury's
3    presence, only that Petitioner was transported to and from the courtroom in handcuffs
4    where jurors may have seen him.  Additionally, the Court of Appeal explained that the
5    trial court conducted voir dire with the jury to determine the effect of briefly seeing
6    Petitioner in handcuffs and none of the jurors indicated that it would have an impact
7    on their assessment of appellant's guilt or innocence.  The Court of Appeal also noted
8    that the trial court instructed the jury that they should not consider the presence of
9    restraints as an indication of Petitioner's guilt and that it was the local Sheriff's
10   Department's policy to use handcuffs in all cases.

11   The Court of Appeal concluded that the Petitioner's motion for a mistrial was
12   properly denied by the trial court.  The Court of Appeal based its conclusion on
13   California case law which routinely holds that brief observations of a defendant in
14   physical restraints by one or more of the jurors either inside or outside the courtroom
15   does not constitute prejudicial error.  *People v. Rich*, 45 Cal. 3d 1036, 1084-1085
16   (1988); *People v. Osband*, 13 Cal. 4th 622, 674 (1996); *People v. Tuilaepa*, 4 Cal. 4th
17   569, 584-85 (1992); *People v. Cecil*, 127 Cal. App. 3d 769, 778 (1982).

18   The Court of Appeal decision is consistent with controlling federal law.  As
19   stated in *Woodford*, a jury's brief inadvertent glimpse of a defendant in physical
20   restraints outside of the courtroom does not presumptively warrant habeas relief.  384
21   F.3d at 593.  Prejudice is not presumed when the jury briefly views a defendant in
22   shackles outside of the courtroom during transport.  *Ghent v. Woodford*, 279 F.3d
23   1121, 1133 (9th Cir. 1002) (no prejudice from jury's brief glance of shackles outside
24   of courtroom while petitioner was being transported); *Cf. Rhoden v. Rowland*, 172
25   F.3d 633 (9th Cir. 1999) (prejudice found when defendant was shackled in the
26   courtroom throughout the entire trial in view of the jury).

27

28                                                    13

Because Petitioner relies solely on his allegation that one or more jurors may have seen him in handcuffs during his transport to and from the courtroom, Petitioner is not able to establish requisite prejudice necessary for habeas relief.  Additionally, the trial court's attempt to assess the impact of seeing Petitioner in handcuffs on potential jurors during voir dire and its limiting instructions to the jury to not consider the presence of restraints work to prevent the juror's brief view of Petitioner in restraints from having a substantial and injurious effect on the verdict.  *Brecht*, 507 U.S. at 623.

## C.     Denial of Motion to Sever

Prior to trial, defense counsel filed an *in limine* motion to sever the robbery charge that of being an ex-felon in possession of a firearm.  RT 3.  Defense counsel filed this motion to prevent the jury from learning of Petitioner's prior felony convictions.  The motion to sever was denied by the trial court. Petitioner subsequently stipulated to having a prior felony conviction.  RT 744.   Petitioner claims that the joinder of these counts violated his due process rights, depriving him of a fair trial as required by the constitution.

### 1.     Legal Standard

A joinder, or denial of severance, of counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process.  *See Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997).  A federal court reviewing a state conviction under 28 U.S.C. § 2254 is not concerned with state law governing severance or joinder in state trials.  *See id.*  Nor is it concerned with the procedural rights to severance afforded in federal trials.  *See id.*  Its inquiry is limited to a petitioner's right to a fair trial under the United States Constitution.  To prevail, a petitioner must demonstrate that the state court's joinder or denial of severance motion resulted in prejudice great enough to render his trial fundamentally unfair.  *Id.*  In

addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 772 (9th Cir. 2002).

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986). This risk is especially great when the prosecutor encourages the jury to consider two sets of charges in concert, e.g., as reflecting a modus operandi even though the evidence is not cross-admissible, and when the evidence of one crime is substantially weaker than the evidence of the other crime. *Bean v. Calderon*, 163 F.3d 1073, 1084-85. But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross-admissible), and the jury is properly instructed so that it may compartmentalize the evidence. *Id.* At 1085-86.

### 2.    Analysis

Petitioner claims that the trial court deprived him of his federal right to a fair trial for denying defense counsel's motion to sever these charges. Petitioner argues that the jury's knowledge of his ex-felon status prejudiced their determination on the robbery charge, rendering his trial fundamentally unfair and in violation of due process. Petitioner filed this claim on direct appeal and the California Court of Appeal addressed the claim in a reasoned opinion.

The Court of Appeal analyzed Petitioner's claim under California law to determine whether the trial court abused its discretion in denying Petitioner's motion to sever the two counts. The Court of Appeal noted four factors used to determine abuse of discretion by a trial court for failure to sever: "1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; 2) certain of the

charges are likely to inflame the jury against the defendant; 3) a weak case has been joined with a strong case, or with another weak case, so that the spillover effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and 4) any one of the charges carries the death penalty or joinder of them turns it into a capital case." *James*, slip op. at 8 (citing *Williams v. Superior Court*, 36 Cal. 3d 441, 452-53 (1984); *People v. Sandoval*, 4 Cal. 4th 155, 172-73 (1992)).

Petitioner contends that the evidence of his prior felony conviction was not cross-admissible with the robbery charge and Respondent concedes this point. Petitioner also argues that the jury's knowledge of his ex-felon status is particularly inflammatory. In response to Petitioner's argument, the Court of Appeal discussed that although cross-admissibility may be considered a factor in suggesting possible prejudice, the lack of cross-admissibility alone does not demonstrate prejudice. The court also noted that the danger to be avoided by severance of counts is the possibility that strong evidence of an inflammatory offense may by used to bolster a weak case on another offense. The court found that this danger was not present in Petitioner's case due to the fact that there was ample evidence to support each offense and neither count was substantially weak. The Court of Appeal denied Petitioner's claim stating that "the trial court did not abuse its discretion in denying the severance motion nor was appellant deprived of a fair trial or due process of law by joinder of all counts." *James*, slip op. at 9.

The decision of the Court of Appeal is consistent with controlling federal law. Although Petitioner argues that the fact that his ex-felon status was not cross-admissible to the robbery charge, the Court of Appeal correctly determined that this fact was not prejudicial per se.[6]  *See Featherstone v. Estelle*, 948 F.2d 1497, 1503

------

[6]  However, this Court notes that evidence pertaining to possession of the gun is cross-admissible as to both counts. It is admissible on the robbery because it was used

1    (9th Cir. 1991).  Moreover, the State did not join a "strong evidentiary case with a

2    much weaker case in the hope that the cumulation of evidence would lead to a

3    conviction in both cases." *Sandoval*, 241 F.3d at 772.  Both the robbery charge and

4    the ex-felon in possession of a weapon convictions were based on substantial

5    evidence.  Petitioner, when detained, was in possession of a loaded magazine that

6    matched the gun used in the robbery.  The same gun that was used in the robbery was

7    found in Petitioner's car along with a ski mask and the money bag that was taken from

8    the scene of the robbery.  The gun, money bag, and ski mask were covered in mud and

9    the Petitioner was also covered in mud when arrived at the hospital.

10        Additionally, any likelihood of prejudice was limited by the trial court's

11   instructions to the jury to consider each count separately and not to consider the prior

12   felony conviction for any reason aside from the felon in possession charge.  *See Davis*

13   *v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2003) (citing *United States v. Lane*, 474 U.S.

14   438, 450 n.13 (1986)).  "Although such jury instructions can pose difficulties by

15   asking juries to 'compartmentalize damaging information about one defendant from

16   joint counts,' the instructions have a better change of effectiveness 'when the evidence

17   of each crime is simple and distinct, even in the absence of cross-admissibility.'"

18   *Davis*, 384 F.3d at 639 (quoting *Bean v. Calderon*, 163 F.3d, 1073, 1084-85 (9th Cir.

19   1998)).  In Petitioner's case, the strength of the evidence in support of each charge and

20   Petitioner's stipulation that he had committed a prior felony, rather than allow the

21   admission of evidence regarding the particular type of felony he had been convicted

22   of, bolster the effectiveness of the trial court's instructions to the jury and diminish

23   any risk of  prejudice from joinder of the two counts.

24   **D.    Petitioner's Stipulation to his Ex-Felon Status**

25

26   _____

27   in the commission of the offense.  It is also admissible to establish an element of the
     charge of ex-felon in possession of a firearm.

28                                    17

To prevent the jury from hearing the nature of his prior felony conviction, Petitioner stipulated to the fact that he had been previously convicted of a felony. Petitioner claims that the trial court erred by failing to advise Petitioner of his constitutional rights to a jury trial, to confront and cross-examine witnesses, and against self-incrimination prior to accepting his stipulation.

### 1.      Legal Standard

Due process requires that a guilty plea entered by a defendant be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  A trial judge may not accept a defendant's guilty plea without creating a record affirmatively showing that the plea was knowing and voluntary; a silent record is invalid.  *Id.* at 242.

A conviction based on stipulated facts is valid only if the defendant knowingly and voluntarily agreed to the stipulation. *Adams v. Peterson*, 968 F.2d 835, 843 (9th Cir. 1992) (en banc).  The defendant must enter into the stipulation with "sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 844.  Unlike a situation where a defendant enters a guilty plea, with  a stipulation, there is no requirement that there be a knowing and voluntary waiver of the defendant's constitutional rights pursuant to *Boykin. Id.* at 839.  "A stipulation to the facts from which the judge or jury may infer guilt is simply not the same as a stipulation to guilt or a guilty plea." *Id.*

### 2.      Analysis

Petitioner claims that the trial court erred in failing to admonish Petitioner of his constitutional rights before accepting his guilty plea.  This claim was brought by Petitioner on direct appeal and the California Court of Appeal addressed Petitioner's

1    claim in a reasoned opinion.

2          The Court of Appeal analyzed Petitioner's claim in accordance with California

3    law.  The court cites *People v. Newman*, 21 Cal. 4th 413 (1999), where the Supreme

4    Court of California rejected the proposition that a defendant's stipulation to his status

5    as a felon required *Boykin* advice and made it clear that the failure to obtain

6    defendant's waiver of rights is not error by the trial court.  The Court of Appeal noted

7    that the *Newman* court refused to extend the *Boykin* requirements "beyond admissions

8    and stipulations that are legally tantamount to a guilty plea, or that necessarily result

9    in penal consequences."  *James*, slip op. at 9.  The Court of Appeal also found that the

10   *Newman* court determined that "a defendant's status as a felon was neither the legal

11   equivalent of a guilty plea nor an admission from which penal consequences would

12   necessarily flow . . . It was merely an evidentiary stipulation reflecting a single

13   element of one of the charged offenses."  *Id.* at 10.  The Court of Appeal concluded

14   that there was no error by the trial court in its failure to procure a waiver of

15   constitutional rights prior to his stipulation to his status as a felon.

16         The Court of Appeal's decision is not contrary to, or an unreasonable

17   application of controlling federal law.  The United States Supreme Court clearly

18   indicates in *Boykin* that a trial court must ensure knowing and voluntary waiver of

19   rights prior to accepting a defendant's guilty plea.  395 U.S. at 243.  Under Ninth

20   Circuit precedent, a conviction based on stipulated facts only requires that the

21   defendant knowingly and voluntarily agreed to the stipulation, not a knowing and

22   voluntary waiver of constitutional rights as required in *Boykin*.  *Adams*, 968 F.2d at

23   839.  Petitioner does not allege that he did not have knowledge or agree to the

24   stipulation, merely that he was not advised of and did not waive his constitutional

25   rights in entering into the stipulation.  Thus, because federal law does not require a

26   trial court to obtain a knowing and voluntary waiver of a defendant's constitutional

27

28                                              19

rights upon accepting a defendant's stipulation to his status as a felon, the Court of Appeal's decision is consistent with controlling federal law.

**E.    <u>Miranda Violation</u>**

While Petitioner was receiving treatment at the hospital,  Deputy Kollo noticed that Petitioner's hands were muddy and asked a sergeant to photograph Petitioner's hands.  Petitioner claims evidence that he attempted to remove mud from his hands while in police custody should have been suppressed as being in violation of his Fifth Amendment rights against self-incrimination pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

**1.    Legal Standard**

In *Miranda*, the Supreme Court held that a person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed.  These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action.  *Id* at 444.  The requirements of *Miranda* are "clearly established" federal law for the purposes of federal habeas corpus review under 28 U.S.C. § 2254(d).  *Juan H. v. Allen*, 408 F.3d 1262, 1271 (9th Cir. 2005); *Jackson v. Giurbino*, 364 F.3d 1002, 1009 (9th Cir. 2004).

"Interrogation means questioning or 'its functional equivalent,' including 'words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"  *Pope v. Zenon*, 69 F.3d 1018, 1023 (9th Cir. 1995) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).  However, the Fifth Amendment privilege against self-incrimination "offers no protection against

compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber v. California*, 384 U.S. 757, 764 (1966).

### 2. Analysis

Petitioner claims that his Fifth Amendment privilege against self-incrimination was violated by admission of evidence of Petitioner wiping his muddy hands on his bed sheet in response to Deputy Kollo's attempt to take a photograph of Petitioner's hands. Petitioner brought this claim on direct appeal before the California Court of Appeal, which denied his claim.

The Court of Appeal acknowledged that the privilege against self-incrimination protects the accused from being forced to give evidence of a testimonial or communicated nature. However, the court stated that this privilege does not protect the accused from being compelled to produce physical or identification evidence. The court analyzed Petitioner's claim using Supreme Court case law, citing *Schmerber*, 384 U.S. at 764. The court also cited various California cases that indicate that an accused's refusal to provide bodily evidence is admissible to demonstrate consciousness of guilt. Finding no error by the trial court, the Court of Appeal denied Petitioner's claim of violation of his Fifth Amendment rights under *Miranda*.

The Court of Appeal decision was not contrary to, or an unreasonable application of federal law. The court's determination that the privilege against self-incrimination did not extend to Petitioner's actions of wiping his hands is consistent with law stated by the Supreme Court in *Schmerber*, 384 U.S. at 764. Additionally, under Ninth Circuit precedent a defendant's actions of refusal to produce physical or identification evidence indicate a consciousness of guilt and are therefore admissible. *See United States v. Parhms*, 424 F.2d 152, 154-155 (9th Cir. 1970) (allowing the admission of evidence of appellant's refusal to participate in a pre-trial line-up due to

the refusal being conduct tending to indicate a feeling of guilt on appellant's part).  As such, Petitioner's claim fails.

**F.  Prosecutorial Misconduct**

Petitioner claims that the prosecution engaged in misconduct in their case against him.  Petitioner alleges six separate instances of prosecutorial misconduct, which he claims violated his due process rights under the Fourteenth Amendment

**1.  Legal Standard**

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  *Id.*; *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under *Darden*, the first issue is whether the prosecutor's remarks or conduct were improper; if so, the next question is whether such remarks or conduct infected the trial with unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "on the merits, examining the entire proceedings to determine whether the prosecutor's [conduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995), *cert. denied*, 516 U.S. 1017 (1995).  Federal habeas relief for claims of prosecutorial misconduct is appropriate only if the misconduct has a substantial and injurious effect or influence in determining the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**2.  Analysis**

**I.  Improper Prosecutorial Comment on Petitioner's Failure to Testify**

22

Petitioner claims that the prosecutor committed *Griffin* error during closing argument by stating that Petitioner was "hiding behind a brick wall." *Griffin v. California*, 380 U.S. 609, 615 (1965). Under *Griffin*, when a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against self-incrimination is violated. *Id.* Petitioner claims that the prosecutor's statements to the jury about the "brick wall" were a reference to Petitioner's failure to testify in his defense and thus constituted *Griffin* error. Petitioner brought this claim of *Griffin* error on direct appeal before the California Court of Appeal, which denied Petitioner's claim in a reasoned opinion.

In its opinion, the Court of Appeal noted that the prosecutor's reference to the "brick wall" was an analogy, describing "the bricks that make up this wall" as "the elements of the crimes" that must be proven beyond a reasonable doubt. *James*, slip op. at 12. The court found the prosecutor's analogy an "innocuous comment on the state of the evidence" and stated that it could not reasonably construed as a comment on the Petitioner's failure to testify. *Id.* at 13.

The Court of Appeal determination that the prosecutor's comments were "innocuous" and therefore, not *Griffin* error, is consistent with federal law. The prosecutor's comments about the "brick wall" did not directly refer to Petitioner's failure to testify and the prosecution specifically stated that the bricks were metaphors for the elements of each crime that needed to be proven beyond a reasonable doubt, not a metaphor for Petitioner's silence. The prosecutor's comments were ambiguous and Ninth Circuit precedent instructs that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations." *Williams v. Borg*, 139 F.3d 737, 744 (9th Cir. 1998)

1    (citing *Donnelly v. DeChristoforo*, 616 U.S. 637, 647 (1974)).

2           Even if the prosecutor's comments are considered to be improper and in

3    violation of *Griffin*,  Petitioner cannot show that the comments rendered his trial

4    fundamentally unfair as required by *Darden*.  477 U.S. at 181.  A prosecutor's

5    comments calling to attention a defendant's failure to testify require reversal only if

6    "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to

7    the jury as a basis for the conviction; and (3) where there is evidence that could have

8    supported an acquittal."  *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993)

9    (citation omitted), *cert. denied*, 510 U.S. 1191 (1994).  In Petitioner's case, the "brick

10   wall" analogy were referred to numerous times throughout the prosecutor's closing

11   argument.  RT 748, 750, 752, 754.  However, the prosecutor does not stress that the

12   jury should infer guilt from the "brick wall," but that they should use the physical and

13   testimonial evidence to dismantle the brick wall.  RT 750.

14          Additionally, the evidence indicating Petitioner's guilt was extensive.

15   Petitioner was found with a loaded magazine that matched the gun identified as the

16   one used in the robbery.  A gun, ski mask, and money bag from the store that was

17   robbed were found in Petitioner's car.  The gun from the robbery was covered in mud

18   and Petitioner was also covered in mud at the time of his arrival at the hospital.  None

19   of the other occupants of Petitioner's car were muddy or had seen one another with

20   the gun, money bag, and ski mask.  Regardless of whether the prosecutor's comment

21   regarding the "brick wall" were improper, Petitioner is not able to establish that the

22   comments warrant reversal.  Thus, the Court of Appeal opinion not to reverse

23   Petitioner's conviction based on the alleged *Griffin* error is consistent with controlling

24   federal law.

25              **ii.    Vindictive Prosecution**

26          Petitioner claims that he was prosecuted only after another case, charging

27

28                                               24

Petitioner with possession of a firearm (identified as No. 166092-7), was dismissed. Petitioner alleges that the case against him for possession of a firearm was dismissed by the prosecution because Petitioner was "illegally detained, interrogated, and charged" by Police Officer A. Charles. Pet. at 15. After this alleged mistreatment by police, Petitioner claims he filed several civil suits against county employees. Pet. Trav. at 46. Petitioner claims vindictive prosecution, arguing that the instant case for robbery was brought in retaliation for dismissal of the possession case and Petitioner's filing of civil suits against county employees.

A prosecutor violates a defendant's due process rights when he brings additional charges solely to punish the defendant for exercising a constitutional or statutory right. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). The defendant has the burden to show that the "charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *United States v. Gallegos-Curiel*, 682 F.2d 1164, 1168 (9th Cir. 1982). The defendant must show that the prosecutorial conduct would not have occurred "but for" the prosecutor's "hostility or punitive animus towards the defendant because he had exercised his specific legal rights." *Id.* At 1168-69.

Petitioner fails to satisfy his burden of showing vindictive prosecution. Petitioner puts forth no evidence of a prior case against him for possession of a weapon, nor does Petitioner put forth any evidence indicating that he filed any civil suits against county employees. Even if his petition had included this evidence, Petitioner does not show that vindictive prosecution occurred. The case against Petitioner was extremely persuasive, thus the evidence against Petitioner suggests that the charges against him were brought for resolution of the robbery. Noting the strong evidence against Petitioner, he does not show that "but for" the prosecutor's "hostility

or punitive animus towards the defendant," Petitioner would not have been charged

and tried for robbery. *Gallegos-Curiel*, 682 F.2d at 1168-69.

### iii.    Destroying Exculpatory Evidence

Petitioner claims that the prosecution committed misconduct by failing to

preserve evidence of Petitioner's shoes from the night of the robbery and Petitioner's

car. The police, during their detention of Petitioner at the hospital and their

investigation of the crime, misplaced Petitioner's shoes. RT 654. Also, after

Petitioner was arrested, the grey Dodge was sent to the impound lot where the people

who had a lien on the car came and recovered the car. RT 38, 63. Petitioner claims

that the government's failure to preserve the evidence of his shoes and his car violate

his due process rights under the Fourteenth Amendment.

For a defendant claiming a due process violation based on failure to preserve

evidence he must show that the evidence that was destroyed was material. *See*

*California v. Trombetta*, 467 U.S. 479, 489 (1984). Thus, defendant must show that

the evidence had exculpatory value before it was destroyed and that it is of such a

nature that the defendant cannot obtain comparable evidence by other reasonably

available means. *Id.* Although the good faith or bad faith of the police is irrelevant to

the analysis when the police destroy material exculpatory evidence, the analysis is

different if the evidence is potentially useful. *Illinois v. Fisher*, 540 U.S. 544, 547-48

(2004); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). When evidence is only

potentially useful there is no due process violation unless there is bad faith conduct by

the police in failing to preserve the evidence. *Id.*

Petitioner cannot show that the evidence of his shoes was exculpatory, merely

that it was potentially useful. Petitioner claims that his shoes on the night of the

robbery were not muddy, which he states would exclude him as the suspect that the

prosecution asserted was running through mud to flee the scene of the crime. Pet.

Trav. 50.  However, several witnesses testified to seeing Petitioner's muddy shoes before they were misplaced.  Additionally, Petitioner's clothing and hands were covered in mud while he was detained at the hospital, supporting the prosecution's theory.  Because the evidence of Petitioner's shoes were potentially useful and not clearly exculpatory, Petitioner has the burden of showing bad faith on the part of police.  *Fisher*, 540 U.S. at 547-48.  Petitioner presents no evidence that the police exhibited bad faith in failing to preserve Petitioner's shoes.

Petitioner also cannot show that the evidence of his car was exculpatory. Police testimony indicated that Petitioner was leaning on the driver's door of the car when he arrived at the hospital and that the steering wheel and gear shift were muddy. RT 372, 439-440. Witness Moore testified that Petitioner was driving the car when they arrived at the hospital.  RT 542-43.  Photos presented by the prosecution showed that the driver's side of the car was muddy.  RT 631- 661.  Additionally, papers were found in the car containing Petitioner's name.  RT 703.  Noting this evidence, Petitioner can at best establish that the evidence of the car would be potentially useful, requiring Petitioner to establish bad faith on the police to prove a violation of his due process rights.  *Fisher*, 540 U.S. at 547-48.  Petitioner does not present any evidence that the police acted in bad faith in failing to preserve the evidence of the car.

Because the evidence of the shoes and the car are only potentially useful for Petitioner, he needs to show bad faith on the part of the police in failing to preserve the evidence to demonstrate that this due process rights were violated.  *Id.*  Petitioner does not put forth any evidence that the police acted in bad faith in misplacing his shoes at the hospital or allowing the car to be taken from the impound lot.  The trial record indicates that the police were at most negligent in failing to preserve the evidence.  Negligent failure to preserve potentially useful evidence is not enough to establish bad faith and does not constitute a violation of due process.  *See Grisby v.*

1 | *Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997).

2 |                    **iv.    Brady Violation**

3 |                    Petitioner claims that the prosecution committed misconduct by

4 | suppressing statements of witness Isaiah Moore.  Moore testified at trial that on the

5 | night of the robbery he spoke to three different police officers and that when he was in

6 | juvenile hall, a parole officer questioned him about the night of the robbery.  RT 474,

7 | 466.  Petitioner alleges that Moore's statements to police were inconsistent with

8 | Moore's trial testimony, information that would be useful to the defense in

9 | impeaching Moore.  Petitioner claims that the prosecution failed to present the defense

10 | with any of the police reports recording Moore's statements, thereby violating his due

11 | process rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

12 |         In *Brady*, the Supreme Court held that "suppression by the prosecution of

13 | evidence favorable to the accused upon request violates due process where it is

14 | material to either guilt or punishment, irrespective or good faith or bad faith by the

15 | prosecution."  373 U.S. at 87.  Evidence is material only it there is a reasonable

16 | probability that, had the evidence been disclosed to the defense, the result of the

17 | proceeding would have been different.  *United States v. Bagley*, 473 U.S. 667, 682

18 | (1985) (plurality opinion).  A "reasonable probability" is a probability sufficient to

19 | undermine confidence in the outcome.  *Id.*  To establish a *Brady* violation, Petitioner

20 | must show that the exculpatory or impeaching evidence was suppressed by the state,

21 | either wilfully or inadvertently, resulting in prejudice.  *Morris v. Y1st*, 447 F.3d 735,

22 | 743 (9th Cir. 2006).

23 |          In his petition, Petitioner does not present any evidence indicating that

24 | defense counsel did not obtain copies of the police reports containing Moore's

25 | statements.  There is no declaration from defense counsel that these reports were not

26 | received.  Even if Petitioner were able to show that these reports were suppressed

27 |

28 |                                    28

improperly, Petitioner cannot show prejudice.  Petitioner does not present any evidence that shows that Moore's statements to police and trial testimony were inconsistent.  Moore testifies that he spoke to three officers and that he told each one of them the truth as to what happened on the night of the robbery.  RT 470-77, 551. Additionally, Moore's testimony is corroborated by other evidence, such as Petitioner's injury, Petitioner's muddy clothes, and testimony from a police officer that Petitioner was outside the driver's side door at the hospital.

Even if Moore's testimony and police statements were inconsistent and defense counsel were able to impeach Moore, the evidence against Petitioner is still sufficiently strong to support a guilty verdict.  Petitioner was found with a loaded magazine that matched the gun identified as the one used in the robbery.  Several witnesses testified as to Petitioner's clothes and shoes being muddy on the night of the robbery, consistent with the prosecution's assertion that Petitioner fell down a muddy hill while fleeing the robbery.  The gun, ski mask, and money bag were muddy and found in Petitioner's car, which witness testimony established Petitioner was driving on the night of the robbery.  A police officer testified that the steering wheel and driver's side of Petitioner's car were muddy. None of the other passengers in the car had mud on them.  Thus, even assuming suppression of Moore's statements by the prosecution and that the statements were inconsistent with Moore's trial testimony, noting the remaining evidence against Petitioner, Petitioner cannot show that evidence of Moore's statements would sufficient to undermine the outcome of the proceedings.

### v.    Stating Facts Not in Evidence

Petitioner claims that the prosecution committed prosecutorial misconduct by stating facts not in evidence during opening and closing argument.  During opening argument, the prosecutor told the jury that Petitioner gave two separate stories to Dr. Theo Kory and that Petitioner had mud on his shoes.  RT 290, 289.  During closing,

the prosecutor told the jury to "follow the trail of mud and you will find who committed the crime" and that it was the defendant's fault that his shoes were not in evidence. RT 797, 768. Petitioner argues that these statements by the prosecution amounted to misconduct because the prosecution commented on evidence that was outside the trial record.

To show prosecutorial misconduct due to a prosecutor's remarks at trial, Petitioner must show first, that the prosecutor's comments were improper; and if so, second, that the remarks infected the trial with unfairness. *Tan v. Runnels,* 413 F.3d 1101, 1112 (9th Cir. 2005). Regardless of whether Petitioner can show that the prosecutor's remarks were improper, he is not able to establish a prosecutorial misconduct claim because he cannot prove prejudice by showing that the prosecutor's comments infected the trial with unfairness. The trial court instructed the jury that they must determine facts "from the evidence received in the trial and not from any other source." RT 725. The Supreme Court has held that when a curative instruction is issued a court presumes that the jury has disregarded inadmissible evidence and that no due process violation occurred. *See Greer v. Miller*, 438 U.S. 756, 766 n.8 (1987); *Tan*, 413 F.3d at 1115 ("we presume jurors follow the court's instructions absent extraordinary circumstances"). Because Petitioner cannot show prejudice, the prosecutor's comments, even if deemed to be improper, do not result in a denial of Petitioner's due process rights.

### vi.    Coached Testimony

Petitioner claims that the prosecution engaged in prosecutorial misconduct by "coaching" the testimony of witness Groff. Petitioner claims that Detective A. Charles contacted Groff on March 5, 1998, days after the robbery, and coached Groff as to description of Petitioner's clothing on the night of the robbery. Petitioner's contention that Detective Charles contacted and coached witness Groff is

30

completely conclusory.  Although Petitioner refers to Charles's April 15, 1998 police report to show that Charles contacted Groff on March 5, 1998, Petitioner does not put forth any evidence, aside from his allegations, that Charles "coached" Groff during this contact.  Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

## G.   Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel due to deficient performance on the part of his defense counsel.  Petitioner alleges nineteen separate deficiencies on the part of the defense counsel: 1) failure to investigate the scene of the crime to examine whether it was muddy; 2) failure to investigate prosecution witnesses prior to the time of trial; 3) failure to move to suppress evidence about Petitioner's muddy shoes; 4) failure to object to the admission of evidence of Petitioner's reaction to being photographed; 5) failure to move to exclude statements made by the prosecution in its opening statement regarding Dr. Kory; 6) failure to file a meritorious motion to exclude testimony of destroyed exculpatory evidence; 7) failure to object to "coached" testimony provided by witness Moore; 8) failure to move to suppress Moore's testimony as a sanction for a discovery violation on the part of the prosecution; 9) failure to object to prosecution's "vouching" for facts not in evidence; 10) failure to refuse to stipulate to the authenticity of the documents found in the vehicle containing Petitioner's name; 11) failure to object to Officer Bublak's testimony; 12) failure to investigate and call all relevant defense witnesses, specifically, Satrina Emerson, Dejarnette Branch, and Tyrae Patterson; 13) failure to present expert medical testimony concerning Petitioner's ability to drive a manual transmission vehicle while suffering a dislocated right hip; 14) failure to move to exclude Deputy Kollo's testimony concerning the extent to which the crime scene was

muddy on the night of the robbery; 15) informing the court prior to sentencing that Petitioner had previously threatened defense counsel; 16) failure to present material evidence to impeach witness Moore; 17) failure to move for suppression of photographic evidence; 18) failure to raise a defense of "third party" culpability; and 19) failure to move for dismissal of verdict based on insufficiency of the evidence.

### 1.    Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

To prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687-88. Additionally, Petitioner must establish that he was prejudiced by counsel's deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *See Id.* at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining Petitioner could not establish prejudice), *cert. denied*, 516 U.S. 1124 (1996).

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).  In a federal habeas challenge to a state criminal judgment, a state court's conclusion that counsel rendered effective assistance is not a fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d).  Both the performance and the prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.  *See Strickland* 466 U.S. at 698.  Claims of ineffective assistance therefore require a review of the record as a whole.

A habeas petitioner cannot simply allege ineffective assistance of counsel without evidence to support his allegations.  *James*, 24 F.3d at 26.  A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient.  *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir.), *cert. denied*, 498 U.S. 960 (1990); *see also Rios v. Rocha*, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

### 2.      Analysis

### I. Ineffective Assistance Claims Based on Unmeritorious Underlying Claims.

Petitioner makes several ineffective assistance claims that rely on unmeritorious claims of trial court error or prosecutorial misconduct: failure to move to suppress evidence about Petitioner's muddy shoes; failure to object to the admission of evidence to Petitioner's reaction to being photographed; failure to move to exclude statements made by the prosecution in its opening statement regarding Dr. Kory; failure to file a motion to exclude testimony of destroyed exculpatory evidence; and failure to move to suppress Moore's testimony as a sanction for a discovery

violation on the part of the prosecution.   Thus, Petitioner's five ineffective assistance claims set forth above fail because trial counsel cannot be ineffective for failing to make a meritless objection. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

### ii.    Failure to Investigate the Scene of the Crime

Petitioner claims that defense counsel was ineffective for failing to investigate the scene of the crime "to determine the extent to which it would have been muddy" on February 27, 1998, the night of the robbery.  Pet. at 14.  In his traverse, Petitioner refers to the report of a private investigator hired by defense counsel which indicates that the investigator did visit the J & A Market.  Pet. Trav. Exh. B at 1.  Thus, Petitioner fails to put forth any evidence that defense counsel did not investigate the scene of the crime.

Even if Petitioner was able to show that defense counsel did not investigate the scene of the crime, Petitioner has not shown either deficient performance or prejudice.  Petitioner was not charged with the instant crimes until May 1998, when defense counsel was assigned to Petitioner's case.  It goes without saying that investigating the crime scene in May, three months after commission of the crime, would not have determined the extent to which the crime scene was muddy on February 27, 1998.  Nor has Petitioner identified another method of investigation which would have provided information favorable to his defense.  Petitioner has failed to establish through evidentiary proof the elements in support of his claim.  *See Toomey*, 898 F.2d at 743; *Rios*, 299 F.3d at 813 n.23.

### iii.    Failure to Investigate Prosecution and Defense Witnesses Prior to Trial

Petitioner claims that defense counsel failed to investigate any of the prosecution's ten witnesses prior to trial.  The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995).  When the record shows that the lawyer

was well-informed and the defendant fails to state what additional information would be gained by further discovery he now claims was necessary, an ineffective assistance of counsel claim fails. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir, 1986). A review of the trial record does not indicate that defense counsel was poorly informed as to any of the prosecution witnesses. Additionally, Petitioner fails to state what additional information would have been gained had these witnesses been interviewed by the defense. A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).

### iv.   Failure to Object to "Coached" Testimony Provided by Witness Moore

Petitioner claims ineffective assistance of counsel for failure to object to the "coached" testimony of witness Moore at the California Evidence Code § 402 Hearing on August 13, 1998. During this hearing, the court noticed that Moore's mother was making head gestures at Moore while he was testifying. The court admonished Moore's mother by stating, "I'm going to ask you if you're going to remain in the courtroom, you can't make head gestures to your son, all right?" RT 459. Noting the trial court's admonishment of Moore's mother and the fact that following the admonishment, she ceased making gestures, defense counsel did not have any legal grounds upon which to object. Trial counsel cannot be ineffective for failing to make a meritless objection. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Petitioner has not established prejudice with regard to this claim.

\

\

### vi.   Stipulating to the Authenticity of Documents Found in the Grey Dodge

35

Petitioner claims defense counsel was ineffective for stipulating to the authenticity of documents found in the grey Dodge that contained Petitioner's name. Petitioner now claims that these documents were manufactured by the prosecution and that defense counsel erred in stipulating to their authenticity. However, Petitioner is unable to show prejudice to establish an ineffective assistance of counsel claim. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697; *Williams*, 52 F.3d at 1470 & n.3.

There was ample evidence of Petitioner's possession of the grey Dodge on the night of the robbery. Witness testimony included that Petitioner was driving the car on the night of the robbery, that Petitioner left the car and returned muddy and injured, and that Petitioner was seen at the hospital leaning up against the driver's side door of the car. Petitioner's clothing and hands were covered in mud, linking him to the muddy money bag, gun, and ski mask used in the robbery. Also, none of the other passengers in the grey Dodge, who Petitioner contends are the likely culprits, had mud on them. Noting the strong evidence against Petitioner, he cannot show that, but for defense counsel's stipulation to the authenticity of the documents in the car, there is a reasonable probability that the result of the proceeding would have been different.

### vii.   Failure to Object to Officer Bublak's Testimony

Petitioner claims that defense counsel was ineffective for failing to object to Officer Bublak's testimony regarding a traffic citation that Petitioner received in December 1997, which was offered by the prosecution to establish that Petitioner was the owner of the grey Dodge. A review of the record contradicts Petitioner's claim, showing that defense counsel did in fact object to the admission of Bublak's testimony, claiming it was "not extremely relevant and potentially

36

prejudicial." RT 526.  Thus, Petitioner's ineffective assistance claim for defense counsel's failure to object to Bublak's testimony is without merit as Petitioner has not established that counsel was deficient in the way he alleges.

### viii.   Failure to Investigate and Call Relevant Defense Witnesses

Petitioner claims ineffective assistance of counsel for failure to investigate and call relevant defense witnesses Satrina Emerson, Dejarnette Branch, and Tyrae Patterson.  Petitioner contends that these witnesses would present testimony that would impeach witness Moore.  Petitioner has not established through evidentiary proof what witnesses would say and how they would aid in his defense.  Petitioner's claim fails because it does not amount to prejudice necessary under *Strickland*.

To establish prejudice cause by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner.  *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003).  Petitioner does not present any information explaining what these potential witnesses would have testified about.  Additionally, Petitioner fails to show how the testimony of these three potential witnesses could have created a reasonable probability that the jury would have reached a verdict more favorable to Petitioner.  Thus, Petitioner's ineffective assistance of counsel claim fails because Petitioner is unable to show prejudice. *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989) (failure to demonstrate prejudice where petitioner offers no indication of what potential witnesses would have testified to, or how their testimony might have changed the outcome of the proceedings).

\
\

### ix.   Failure to Present Expert Medical Testimony in Petitioner's Defense

Petitioner claims that defense counsel was ineffective for failing to present expert medical testimony concerning Petitioner's ability to drive a manual transmission vehicle while suffering from a dislocated hip. Petitioner has provided no evidence in his petition that shows that defense counsel did not investigate the possibility of calling a medical expert whose testimony would be helpful to Petitioner. Additionally, Petitioner does not provide declarations from any medical expert that would testify as to his claim or any information that such testimony would be favorable to his defense. *See Toomey,* 898 F.2d at 7; *Rios*, 299 F.3d at 813 n.23. Because Petitioner merely speculates as to how a medical expert would testify, he does not establish prejudice necessary under *Strickland*. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("speculation about what an expert could have said is not enough to establish prejudice").

### x.    Failure to Move to Exclude Deputy Kollo's Testimony

Petitioner claims that defense counsel was ineffective for failing to move to exclude the testimony of Deputy Kollo concerning the extent to which the crime scene was muddy on February 27, 1998. Petitioner argues that Deputy Kollo did not actually visit the scene of the crime on the night of the robbery and thus his testimony was hearsay and should have been excluded.

Regardless of whether Petitioner can establish whether Kollo's testimony was hearsay, his claim lacks merit because he cannot establish prejudice. Review of the trial record reveals that eyewitnesses Glotch and Banuelos both testified that the hillside near the scene of the crime was muddy on the night of February 27, 1998. RT 314, 317, 343. Additionally, Kollo testified at trial that his knowledge of the area in question being muddy in February 1998 was based on his background knowledge and experience in the area, and not on his presence in the area at the time of the incident. RT 657. Thus, Petitioner is not able to show that, but for defense counsel's failure to

1    move to exclude Kollo's testimony, the result of the proceeding would have been

2    different.

3                    **xi.       Informing the Court of Petitioner's Threats**

4                    Petitioner claims that defense counsel was ineffective for

5    informing the court during sentencing that Petitioner had threatened her.  During an in

6    camera hearing, defense counsel informed the court that Petitioner had said "he would

7    like to hit [her]" and that "he would come after [her]."  RT 846.  Petitioner denies

8    making threats to defense counsel and contends that her allegations prejudiced the

9    court during sentencing.  Petitioner does not present any evidence, aside from his

10   conclusory allegations, that  defense counsel's accusations prejudiced the sentencing

11   decision made by the court.  Conclusory allegations of the effect of defense counsel's

12   statements over the trial court's sentencing decision which not supported by a

13   statement of specific facts do not warrant habeas relief.  *James*, 24 F.3d at 26.  Thus,

14   Petitioner's claim lacks merit.

15                   **xii.      Failure to Impeach Moore's Testimony**

16                   Petitioner claims that defense counsel was ineffective by failing

17   to present material evidence for impeachment purposes of witness Moore.  Petitioner

18   claims that on July 1, 1998, Moore mailed Petitioner a letter detailing the events of

19   February 27, 1998.  Petitioner claims that this letter contradicted Moore's trial

20   testimony and that he gave the letter to defense counsel to use to impeach Moore

21   during cross-examination.  Petitioner fails to attach the letter written by Moore to his

22   petition or to establish what the letter said and how it would have been helpful to

23   Petitioner's defense.  Thus, Petitioner's claim is based solely on his conclusory

24   allegations about the usefulness of the letter.  Without the letter and any information

25   about its contents, Petition is unable to establish ineffective assistance of counsel.

26   *James*, 24 F.3d at 26 (conclusory allegations not supported by a statement of specific

27

28                                                    39

facts do not warrant habeas relief).

### xiii.    Failure to Move for the Suppression of Photographic Evidence

Several photographs were admitted at trial that pictured Petitioner after he attempted to wipe mud from his hands at the hospital, the interior and exterior of the grey Dodge, and the gun and money bag found under the seat of the Dodge. Petitioner claims that defense counsel was ineffective for failing to investigate the "veracity" of these photographs and the existence of additional photographic evidence. Pet. at 17. Additionally, Petitioner claims that defense counsel was ineffective for failing to move to suppress the photographs.

Petitioner's claim lacks merit. Petitioner does not present any evidence that defense counsel did not investigate the "veracity" of the photographs or that there was any problem with the veracity of the photographs. Nor has Petitioner provided any legal basis for a motion to suppress the photographic evidence. Petitioner's claim lacks factual support and has no legal basis, thus habeas relief is not merited. *James*, 24 F.3d at 26 (conclusory allegations not supported by a statement of specific facts do not warrant habeas relief).

### xiv.    Failure to Raise a Defense of "Third Party" Culpability

Petitioner claims that defense counsel was ineffective for failing to argue a defense of "third party" culpability, specifically that Isaiah Moore was responsible for the robbery. Petitioner claims that eyewitness Banuelos was unsuccessful in identifying Petitioner's voice in a voice sample and that her description of the robber did not match Petitioner's description. Petitioner also contends that physical evidence from hairs found in the ski cap did not match Petitioner's hair. Petitioner claims that defense counsel's "failure to present obvious inconsistencies in the physical discription[sic] of Petitioner and the obvious similarities of the physical caracheristics[sic] of a third party resulted in ineffective

assistance of counsel." Pet. at 18.

However, despite Petitioner's claim, defense counsel did raise a third party defense on behalf of Petitioner. Defense counsel cross-examined Banuelos about her inconsistencies in her description of the robber. RT 355-360. Defense counsel pointed out to the jury the similarities in height between the robber described by Banuelos and Isaiah Moore. RT 548. Defense counsel also presented evidence to the jury that the hairs found in the ski mask did not belong to Petitioner. RT 708. Additionally, during closing argument, defense counsel specifically argues a third party defense. RT 786-787. Thus, because a review of the trial record clearly shows that defense counsel did raise this defense, though unsuccessfully, Petitioner's claim lacks merit.

**xv.     Failure to Move for Dismissal Based on Insufficient Evidence**

Petitioner claims that defense counsel was ineffective for failing to move for dismissal of the jury verdict due to insufficiency of the evidence. A state prisoner who alleges that evidence in support of his state conviction cannot be fairly categorized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). A federal habeas court reviewing a claim of insufficiency of the evidence "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993) (quoting *Jackson*, 443 U.S. at 319).

The evidence against Petitioner was extremely persuasive. Witness testimony stated that Petitioner was driving the grey Dodge on the night of the robbery, parked the car in an area matching the description of where the robbery occurred, left the car,

41

and returned ten minutes later muddy and injured.  Evidence also suggests that when petitioner arrived at the hospital, his clothing and hands were covered in mud, linking him to the muddy money bag, gun, and ski mask used in the robbery.  Petitioner was seen leaning outside the driver's side door to the Dodge, where the steering wheel and driver's side area were muddy.  Additionally, the prosecutor put forth evidence that none of the other passengers in the Dodge had mud on them.  Also, while in the hospital, Petitioner handed his girlfriend a loaded magazine that matched the gun used in the robbery.  Considering the substantial evidence against Petitioner, he cannot establish that no rational trier of fact could have found the elements of crime beyond a reasonable doubt.  *Payne*, 982 F.2d at 338.  Thus, Petitioner cannot establish ineffective assistance of counsel because trial counsel cannot be ineffective for failing to raise a meritless motion.  *Juan H.*, 408 F.3d at 1273.

## H.   Improper Admission of Evidence, Denial of *Marsden* Motion

Petitioner claims that the trial court abused its discretion by allowing the prosecution to enter into evidence a traffic citation which was ruled inadmissible in another case against Petitioner.  Petitioner also claims that the trial court abused its discretion by denying the five *Marsden* motions filed by Petitioner.

### 1.   Improper Admission of Evidence

#### I.   Legal Standard

The admission of evidence is not subject to habeas review unless a specific constitutional guarantee is violated or the error is of such a magnitude that the result is a denial of a fundamentally unfair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.) *cert. denied*, 479 U.S. 839 (1986).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass*, 45

F.3d 1355, 1357 (9th Cir. 1995).

**ii.   Analysis**

Petitioner asserts that the trial court abused its discretion and caused reversible error by admitting evidence that was ruled previously inadmissible in a different case in another court. Pet. at 16.  In his traverse, Petitioner argues that the trial court allowed the prosecution to use a December 1997 traffic citation to connect Petitioner to the grey Dodge.  Pet. Trav. at 60.  Petitioner claims that this citation was obtained by the prosecution after a search of Petitioner's grandmother's house, whose name was given to law enforcement officials during an interrogation of Petitioner that violated his *Miranda* rights.  *Id.*  Petitioner contends that evidence of the traffic citation was ruled inadmissible in a prior case against Petitioner in Superior Court by Judge Laural Lindenbaum.  *Id.*  Petitioner asserts that, in the instant case, the admission of traffic citation evidence led the prosecution to obtain the name of Officer Bublak, who was able to testify at trial and connect Petitioner to the grey Dodge that was allegedly used in the commission of the robbery of J & A Market.  *Id.*

Regardless of whether Petitioner can prove error on the part of the trial court in admitting of the traffic citation evidence, Petitioner is not able to establish a due process claim.  Petitioner does not show that the admission of the traffic citation evidence was arbitrary or so prejudicial to render his trial fundamentally unfair. *Walters*, 45 F.3d at 1357.  As stated previously, the evidence presented by the prosecution linking Petitioner to the robbery was extremely persuasive.  In light of the strong evidence against Petitioner, the admission of evidence connecting Petitioner to the grey Dodge two months prior to the robbery is not so prejudicial to render Petitioner's trial fundamentally unfair.  *See  Mancebo v. Adams*, 435 F.3d 977, 979 (9th Cir. 2006) (finding that polygraph evidence played only a minor role at trial and, therefore, the erroneous introduction of evidence that defendant refused a polygraph

43

1    was not prejudicial in light of sufficient evidence supporting petitioner's conviction).

2         **2.**       **Improper Denial of Petitioner's *Marsden* Motions**

3          **I.**      **Legal Standard**

4            The denial of a motion to substitute counsel implicates a

5    defendant's Sixth Amendment right to counsel and is properly considered in federal

6    habeas. *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir. 1994),

7    *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en

8    banc). Ninth Circuit precedent states that when a defendant voices a seemingly

9    substantial complaint about counsel, the trial judge should make a thorough inquiry

10   into the reasons for the defendant's dissatisfaction. *Id.* at 1475-76; *United States v.*

11   *Robinson*, 913 F.2d 712, 716 (9th Cir. 1990). However, the inquiry need only be as

12   comprehensive as the circumstances would reasonably permit. *King v. Rowland*, 977

13   F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was

14   not necessary). A federal court of habeas review should consider whether the trial

15   court's denial of a *Marsden* motion "actually violated [petitioner's] constitutional

16   rights in that the conflict between [petitioner] and his attorney had become so great

17   that it resulted in a total lack of communication or other significant impediment that

18   resulted in turn in an attorney-client relationship that fell short of that required by the

19   Sixth Amendment." *Schell*, 218 F.3d at 1026.

20         **ii.**      **Analysis**

21           Petitioner claims that his federal constitutional rights were

22   violated by the trial court's denial of his five separate *Marsden* motions seeking to

23   substitute counsel. The trial record indicates that the trial court held hearings on

24   Petitioner's *Marsden* motions on July 23, 1998 and August 10, 1997 and subsequently

25   denied the motion. R. Exh. O, R. Exh. N. The record also indicates that Petitioner

26   filed another *Marsden* motion prior to sentencing, that was denied without a hearing.

27

28                                         44

1      Petitioner's motion to substitute counsel was denied by the trial court.

2             Petitioner's *Marsden* motions exclusively contain claims that are brought

3      before this court on habeas review.  Petitioner asserts that his case requires

4      substitution of counsel for defense counsel's alleged deficient acts and refusal to bring

5      certain motions during pre-trial proceedings.  As discussed earlier, none of

6      Petitioner's allegations of ineffective assistance of counsel have  merit.  Additionally,

7      the motions Petitioner claims defense counsel should have brought are determined by

8      this court to lack merit.

9             Petitioner's conflict with his attorney arises from their differences in opinion

10     involving strategic matters, which does not require substitution.  *Schell*, 218 F.3d at

11     1026 & n.8 (quoting *Brookhart v. Janis*, 384 U.S. 1, 8 (1966) ("[A] lawyer may

12     properly make a tactical determination of how to run a trial even in the face of his

13     client's incomprehension or explicit disapproval")).  Petitioner does not establish that

14     the trial court erred in denying his *Marsden* motions.  Petitioner is not able to exhibit

15     that the relationship with his defense counsel was so conflicted to violate his Sixth

16     Amendment right to adequate counsel.  Although Petitioner shows that he and defense

17     counsel had disagreements over trial tactics and that they did not generally get along

18     with one another, Petitioner does not show that his Sixth Amendment rights were

19     violated by the trial court's denial of his *Marsden* motions.  *See Morris v. Slappy*, 461

20     U.S. 1, 13-14 (1983) (holding that Sixth Amendment requires only competent

21     representation and does not guarantee a meaningful relationship between a defendant

22     and counsel).

23     **I.      Ineffective Assistance of Appellate Counsel**

24            Petitioner asserts that appellate counsel committed ineffective assistance of

25     counsel for failing to raise on appeal: 1) ineffective assistance of counsel;

26     2) prosecutorial misconduct and; 3) abuse of discretion by the trial court.

27

28                                               45

### 1.    Legal Standard

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucy*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set forth in *Strickland*, 466 U.S. 668 (1984). *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986). A defendant must show that appellate counsel's advice or actions fell below an objective standard of competence and there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9.

Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See Miller*, 882 F.2d at 1434 (footnote and citations omitted). Appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason, because he declined to raise a weak issue. *See id.*

### 2.    Analysis

Petitioner argues that appellate counsel was ineffective for failing to raise on appeal, ineffective assistance of counsel, prosecutorial misconduct, and abuse of discretion by the trial court. As discussed above, each of the claims Petitioner asserts should have been raised by appellate counsel lacks merit and thus would not have been meritorious on appeal. The weeding out of weaker issues is one of the hallmarks of appellate advocacy. *See Miller*, 882 F.2d at 1434. Appellate counsel's failure to raise a weak issue will frequently fall within an objective standard of competence, and have caused his client no prejudice. *See Miller*, 882 F.2d at 1434.

The failure of appellate counsel to raise the weak and likely unsuccessful claims of ineffective assistance of counsel, prosecutorial misconduct, and abuse of discretion by the trial court did not amount to ineffective assistance of appellate counsel under *Strickland*.  Petitioner is not entitled to federal habeas relief on this claim.

**J.      Cumulative Error**

Petitioner claims that cumulative error and failure to record the trial proceedings rendered his trial fundamentally unfair requiring reversal.

**1.      Legal Standard**

The Ninth Circuit has held that the cumulative effect of several trial errors may prejudice a defendant so much that he is deprived of his due process right to a fair trial, requiring that his conviction be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003); *Thomas v. Hubbard*, 273 F.3d 1164, 1179-81 (9th Cir. 2002).  However, where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

**2.      Analysis**

Despite Petitioner's claim of cumulative error, it does not appear that constitutional error exists here.  Regardless, habeas relief is not in order because this is not one the exceedingly rare cases in which the cumulative effect of the alleged trial errors so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *Cf. Alcala*, 334 F.3d at 893-95 (reversing a conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution); *Thomas*, 273 F.3d at 1179-81 (reversing conviction based on cumulative prejudicial effect of (a) admission of triple hearsay statement providing only evidence that defendant had motive and access to murder weapon; (b)

prosecutorial misconduct in disclosing to the jury that defendant had committed prior crime with use of firearm; and (c) truncation of defense cross-examination of a police officer, which prevented defense from adducing evidence that someone else may have committed the crime and evidence casting doubt on credibility of main prosecution witness).  Petitioner is not entitled to habeas relief on his claim of cumulative error.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. Petitioner's motions seeking the Court's judicial notice of his writ is DENIED as moot (docket no. 47).  The clerk shall enter judgment in favor of the Respondent and close the file.

IT IS SO ORDERED.

DATE: August 28, 2006

_____
JEFFREY S. WHITE
United States District Judge